IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT DIABETES CARE INC. and<br>ABBOTT DIABETES CARE LIMITED,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEXCOM, INC.,<br><br>    Defendant. | **Redacted - Public Version**<br><br>C.A. No. 21-1699-KAJ |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:
David Nelson
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Valerie Lozano
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

Nina Tallon
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

Dated: May 27, 2022

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................3

I.  ABBOTT'S CLAIM FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED AS DUPLICATIVE AND LACKING A USEFUL PURPOSE....................3

II. ABBOTT FAILS TO STATE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.........................................................................4

    A.    Abbott's Complaint Fails to Plead that the License Grant Contains an Implied Covenant with Respect to ADC Affiliates. ................................................4

    B.    Abbott's Implied Covenant Arguments Depend on an Objectively Unreasonable Interpretation of the SLA. ....................................................................6

        1.    "ADC" as used in the SLA only refers to ADC Inc. – not to its affiliates.................................................................................................6

        2.    Abbott's proffered interpretation of "ADC" conflicts with the rest of the SLA. ......................................................................................7

CONCLUSION..................................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Aspen Advisors LLC v. United Artists Theatre Co.*,
   843 A.2d 697 (Del. Ch. 2004) ............................................................................................... 8

*Brinckerhoff v. Enbridge Energy Co., Inc.*,
   159 A.3d 242 (Del. 2017), *as revised* (Mar. 28, 2017) ....................................................... 7

*Cf. Black Horse Capital, LP v. Xstelos Holdings, Inc.*,
   2014 WL 5025926 (Del. Ch. Sept. 30, 2014) ...................................................................... 7

*Chavarriaga v. New Jersey Dept. of Corrections*,
   806 F.3d 210 (3d Cir. 2015) ................................................................................................ 5

*Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*,
   556 F. Supp. 2d 367 (D. Del. 2008) ..................................................................................... 4

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) .................................................................................................. 7

*In re Shorenstein Hays-Nederlander Theatres LLC Appeals*,
   213 A.3d 39 (Del. 2019) ...................................................................................................... 9

*JJCK, LLC v. Project Lifesaver International*,
   2011 WL 2610371 (D. Del. July 1, 2011) ....................................................................... 3, 4

*Kuroda v. SPJS Holdings, L.L.C.*,
   971 A.2d 872 (Del. Ch. 2009) ............................................................................................. 6

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
   903 A.2d 728 (Del. 2006) .................................................................................................... 6

*Renco Group, Inc. v. MacAndrews AMG Holdings, Inc.*,
   2015 WL 394011 (Del. Ch. May. 7, 2015) ......................................................................... 9

*Smartmatic Int'l. Corp. v. Dominion Voting Sys. Int'l. Corp.*,
   2013 WL 1821608 (Del. Ch. May 1, 2013) ........................................................................ 9

# PRELIMINARY STATEMENT[1]

Abbott has invoked its 2014 Settlement and License Agreement (D.I. 8-1, Ex. B; hereinafter, the "SLA") with DexCom in two cases pending before this court—this one, as well as the recently-transferred Texas Action (now-styled *DexCom, Inc. v. Abbott Diabetes Care, Inc. et al.*, 22-cv-00605-KAJ; hereinafter the "Transferred Action"). In both actions, Abbott's position is that it cannot be liable for infringement of DexCom's asserted patents because the claims of those patents were licensed under the SLA. No matter how it decides answers, the factfinder in this case will dispose of all the subordinate issues raised in Abbott's declaratory judgment and implied covenant claims when the question of whether the SLA licensed the asserted patent claims is answered. Once the precise scope of the SLA and whether DexCom is in breach is resolved, those claims become superfluous.

To be clear: following the transfer ruling by the Texas court, "[a] full resolution of the license defense is for the Delaware Court to decide." (D.I. 105, ("Transfer Order") at 10.)[2] Contrary to the distortions in Abbott's Answering Brief, the Texas Court did not find "no deficiencies in ADC's breach of contract claim." (Opp. at 1.) Rather, it specifically held that "***[i]nterpreting the merits of the agreement . . . is premature at this stage***." (Transfer Order at 10 (emphasis added).) Instead, the merits of Abbott's licensing defense, i.e. whether the asserted patents are licensed to Abbott and thus whether DexCom has breached the SLA contract, will be decided in this venue. Abbott's other two claims add nothing and should be dismissed.

---

[1] All internal quotation marks and citations have been omitted, and all emphases supplied, unless noted otherwise. All defined terms are those used in DexCom's opening brief (D.I. 21; hereinafter, "Motion" or "Mot."). "Opp." or "Opposition" refers to Plaintiff's Answering Brief (D.I. 26).

[2] In support of its transfer motion, Abbott argued the same: that any interpretation of the contract relevant to the Abbott's license defense remained "disputed, and for the Delaware court to decide." (Ex. 1, Abbott's Reply in Further Support of it Motion to Transfer, at 1.)

***First***, Abbott's declaratory judgment claim serves no useful purpose.  Abbott all but admits this, conceding that if its breach of contract claim is successful, that would "moot infringement claims," which of course would also moot its claim for a declaratory judgment of non-infringement.  Abbott cannot escape the fact that those claims are inextricably intertwined; as goes one, so goes the other.

***Second***, Abbott fails to state a plausible claim for breach of the implied covenant of good faith and fair dealing.  Abbott now contends that its implied covenant claim is based on its position that the SLA grants a license not just to it, but to its affiliates.  As an initial matter, that is not the claim Abbott pled; its allegations do not support this belated theory newly offered in an attempt to save its claim.  But even if it had pled this theory, it fails.  An implied covenant claim cannot rewrite a contract under which DexCom expressly granted a license to ADC and ADC alone.  Abbott provides no allegations or arguments that would permit this court to ignore the fact that the SLA defined ADC without reference to its affiliates.  Furthermore, reading "ADC" as it appears in the license provision to include other entities would transform the provisions of the agreement that refer to ADC and its affiliates separately into surplusage.  Abbott has offered no support for its flawed claim that its non-party affiliates had any reasonable expectation that they would share in ADC's license – nor could they have had such expectations given the express terms of the agreement.

For these reasons, those set forth below, and all those in DexCom's Opening Brief, the Court should dismiss Counts II and III of Abbott's Complaint with prejudice.

## **ARGUMENT**

**I.   ABBOTT'S CLAIM FOR DECLARATORY JUDGMENT SHOULD BE DISMISSED AS DUPLICATIVE AND LACKING A USEFUL PURPOSE**

Abbott contends that its claim for declaratory judgment of non-infringement based on its license defense is not duplicative of its breach of contract claim because "[l]icense defenses to patent infringement actions can be successfully pursued without any allegation or proof of breach." (Opp. at 12.)  True, so far as it goes.  However, where, as here, DexCom has acted under the good faith belief that Abbott does not have a valid license because the SLA does not apply to the asserted patents, and Abbott has alleged breach of the SLA based on DexCom's actions, the breach claim and the license defense are inextricably intertwined.  Adjudicating both claims depends on the same fundamental question:  whether the asserted patents fall within the scope of the license grant.  A split decision between these two claims is not possible:  if DexCom did not breach the SLA when it sued Abbott in Germany and Texas, then it must be because the patents it asserted in those jurisdictions were not licensed; and if DexCom did breach the SLA by asserting those patents, it can only be because if the asserted claims fell within the scope of the SLA, *i.e.*, they were licensed.  Where the issues in a declaratory judgment count duplicate the contractual scope issues raised in a breach count, the former is duplicative and should be dismissed.

The court's decision in *JJCK, LLC v. Project Lifesaver International* is instructive.  2011 WL 2610371 (D. Del. July 1, 2011).  There, the plaintiff brought a breach of contract claim and sought a declaratory judgment that it was permitted to terminate the same contract as a result of the breach.  *Id.* at *4.  Defendant countered with a breach of contract claim, arguing that the notice of termination was improper and the contract was still in effect; defendant also moved to dismiss the declaratory judgment count as duplicative of the breach of contract counterclaim.  *Id.* at *5.  There, as here, the court found both parties' breach of contract claims, as well as plaintiff's

3

declaratory judgment claim, turned on the same question: whether the contract still governed the pending dispute, *i.e.*, whether the plaintiff's termination could be given legal effect. There, as here, the declaratory judgment claim relating to the termination depended on a narrower set of facts than the breach claim, or, as Abbott puts it, the declaratory judgment claim "lack[s] elements of proof . . . required for a breach claim." (Opp. at 12.) Nonetheless, the court in *JJCK* dismissed the declaratory judgment count as useless, noting that the "identical issue" of the validity of the termination "[would] necessarily be decided in resolving the breach of contract claims." *JJCK*, 2011 WL 2610371, at *6. So too here: although Abbott's declaratory judgment claim may depend on a smaller universe of facts, the lesser is entirely subsumed by the greater. Abbott can get everything it seeks in this action through its breach of contract claim; the declaratory judgment count "adds nothing," and should be dismissed. *Id.*

Abbott also claims its breach of contract and declaratory judgment claims are not duplicative in light of "distinctions between the relief sought for each of these two counts." (Opp. at 12.) Of course, that is true of every declaratory judgment claim brought alongside claims for remedies in the form of monetary damages or specific performance, yet that fact does not preclude dismissal of the former if the claim "will not serve a useful purpose or is otherwise undesirable." *Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 373 (D. Del. 2008) (dismissing declaratory judgment claim, maintaining breach of contract claim for monetary damages).

## II. ABBOTT FAILS TO STATE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Abbott's Complaint Fails to Plead that the License Grant Contains an Implied Covenant with Respect to ADC Affiliates.

Abbott does not dispute that under Delaware law, an implied covenant must fill a valid, alleged implied obligation. (Mot. at 10.) Rather, Abbott claims it has alleged an "implied

4

obligation or 'gap' in the SLA" that provides "protection for activities by ADC affiliates." (Opp. at 8.) But Abbott does not support that assertion with any citation to its Complaint. That is because Abbott's Complaint does not allege any implied obligation or gap in the SLA, much less identify it as being protection for its affiliates. (Compl. ¶¶ 84-90.)

Abbott's attempt to revise history cannot change what it actually pled, which was nothing more than a duplicative, belt and suspenders claim that sought relief through this claim "[t]o the extent … that any of the breaches alleged [in its breach of contract allegations] are not breaches of the SLA's express terms." (Comp. ¶ 86.) And the conduct Abbott alleged constituted a breach of the implied covenant is the same conduct underlying its breach of contract claim – DexCom's "filing and maintaining" the Texas and Foreign Actions. (*Id*. ¶ 87.) Although certain allegations mention ADC's "affiliates" in passing, Abbott's Complaint does not allege that the SLA contains an implied covenant under which DexCom licensed its patents directly to ADC's affiliates.[3] Only now, faced with DexCom's motion, has Abbott articulated this new, flawed theory of its claim. That it cannot do. *See Chavarriaga v. New Jersey Dept. of Corrections*, 806 F.3d 210, 232 (3d Cir. 2015) ("Although a court on a motion to dismiss ordinarily must accept the allegations in the complaint as true, it is not compelled to accept assertions in a brief without support in the pleadings."). Abbott's Complaint fails to plead an implied obligation that the implied covenant fills, warranting dismissal for failure to state a claim.

---

[3] Rather, Abbott claimed that the affiliates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 8-1 ¶ 46.) Even if that were the case, then the license Abbott refers to would still be that which DexCom granted to ADC in the express language of the SLA (D.I. 8-1 Ex. B ¶ C.2), not an implied license to unnamed ADC affiliates.

5

### B. Abbott's Implied Covenant Arguments Depend on an Objectively Unreasonable Interpretation of the SLA.

Even if Abbott had pleaded an implied obligation benefitting ADC's affiliates, such a claim would still fail for lack of plausibility. When interpreting a contract, "[a] court must accept and apply the plain meaning of an unambiguous term in the context of the contract language and circumstances." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006). And a cause of action for breach of the implied covenant "cannot be invoked to override the express terms of the contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009). Yet that is just what Abbott hopes to achieve, first by reading "ADC" as used in the SLA to include all (or any) of ADC's affiliates; and, second, by granting ADC's affiliates rights over and above those expressly included in the agreement, thereby nullifying those specific provisions. As neither of those interpretations is reasonable or plausible, Abbott's implied covenant claim fails as a matter of law.

#### 1. "ADC" as used in the SLA only refers to ADC Inc. – not to its affiliates.

According to Abbott's Opposition, the express provision of the SLA in which DexCom granted ***ADC*** a "royalty-free, worldwide patent license" to certain DexCom patents and applications, which is expressly limited to ADC, should extend to ADC's affiliates and "such protection is implied under the covenant." (Opp. at 8-9.) But the SLA defines ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Abbott does not allege that "ADC" is ambiguous as used in the SLA; it simply now declares a meaning of ADC that suits it best in the face of losing a claim it failed to properly plead. Under Delaware law, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232 (Del.

1997). Here, that is all that exists. Abbott fails to explain how a provision setting out a licensor-licensee relationship expressly between DexCom and ADC has any bearing (whether express or implied) on the rights of ADC's affiliates. The Complaint contains no factual allegations from which this Court could infer that the parties understood "ADC" as used in the license grant to mean ADC and its affiliates. Given the total absence of allegations bridging the gap between the plain language of the SLA and Abbott's preferred reading, the Complaint provides no basis to credit Abbott's post-hoc claim that the SLA's license provision runs to ADC's affiliates.

        2.       <u>Abbott's proffered interpretation of "ADC" conflicts with the rest of the SLA.</u>

Abbott's contention that the SLA contains an implied obligation for DexCom to extend the license it granted to ADC's affiliates is objectively unreasonable. *Cf. Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *19 (Del. Ch. Sept. 30, 2014) (rejecting pleaded definition of contract term that "lack[ed] internal coherence"). The term "ADC" used alone must be "given the same meaning throughout the contract." *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 257 n.54 (Del. 2017), *as revised* (Mar. 28, 2017). As such, all references to "ADC" alone must refer to either the entity as defined in the agreement, or the never-used "ADC and ADC affiliates" definition Abbott proffers for the first time in its Opposition.

The contract language, however, precludes any inference that "ADC" includes ADC's affiliates. ADC is one of the two "Parties" to the SLA, and the SLA explicitly recognizes that Parties and Affiliates are not synonymous. (*Compare* D.I. 8-1 Ex. B at 1 (noting "each of [DexCom and ADC] is referred to as a 'Party' and . . . are collectively referred to as the 'Parties'"), *with id.* ¶ A.4 ("'Affiliate' means any entity that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with the entity specified).) When ADC and DexCom intended to include ADC's affiliates in a provision of the SLA, they

7

used the term ████████████████████████████████████████████████████████,

which is entirely consistent with the fact that the defined term "ADC" does not include its affiliates (*id*. at 1 (definition of "ADC").) Likewise, ████████████████████████████████
████████████████████████████████████████████████████████████████████

Given the plain language of the SLA, it is not plausible that the language in the license grant referring to "ADC" without reference to affiliates bestows any rights (whether express or implied) upon ADC's affiliates.

Abbott's newly proffered implied covenant theory upends and expands the set of rights and protections that ADC's affiliates do enjoy as non-signatories to the agreement. For example, Sections B and D of the SLA afford ████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████ That is not true, however, of the license grant. (*Id.* ¶ C.2 ████████████████████████████████████ These provisions unambiguously demonstrate that the parties expressly considered whether and when to grant right to ADC affiliates. ADC cannot plausibly allege that the negotiating parties simply left a gap as to ADC Affiliates with regard to the license while expressly addressing affiliate rights in other sections of the agreement. The Court should not read the SLA "to grant . . . contractual protections that [the parties and beneficiaries] failed to secure for themselves at the bargaining table." *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004) (granting motion to dismiss).

Nor can Abbott plead such an implied covenant in the alternative, and its principal case in support of that position is unavailing. In *Renco Group*, the plaintiff's complaint included allegations that it "intended to protect its interest[s] . . . by negotiating provisions to limit [defendants'] ability to act unilaterally," where such unilateral action was the subject of both the

8

breach and implied covenant claims; and that defendants "knew what was bargained for" in that regard. *Renco Group, Inc. v. MacAndrews AMG Holdings, Inc.*, 2015 WL 394011, at *7. Here, however, Abbott fails to allege either that ADC negotiated the License Grant with an eye towards its affiliates' interests, or that DexCom was aware of such intention. Abbott's newfound expectation that the license granted to ADC was simultaneously granted to its unnamed affiliates contravenes the general principle of Delaware law that courts must not "read a contract to render a provision or term meaningless or illusory." *In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 56 (Del. 2019). Abbott's implied covenant argument would render the provisions applicable to ADC's affiliates meaningless. (*See, e.g.*, D.I. 8-1 Ex. B ¶¶ D.3, B.3.)

That nullification should end the inquiry: the parties and the Court need not waste time and resources litigating a claim that depends on one party's interpretation that neither "comports with the remaining contents of the document [n]or gives effect to all the words in dispute." *Smartmatic Int'l. Corp. v. Dominion Voting Sys. Int'l. Corp.,* 2013 WL 1821608 at *4 (Del. Ch. May 1, 2013). In cases like this one, "the court may, as a matter of law and without resorting to extrinsic evidence, resolve the meaning of the disputed term" against an unreasonable interpretation. *Id.*

## CONCLUSION

For all the reasons above, and those in its Opening Brief, DexCom respectfully requests that the Court dismiss Counts II and III of ADC Inc.'s Complaint.

|  |  |
|---|---|
| | Respectfully Submitted, |
| | /s/ John W. Shaw |
| | John W. Shaw (No. 3362) |
| | Andrew E. Russell (No. 5382) |
| | Nathan R. Hoeschen (No. 6232) |
| | SHAW KELLER LLP |
| | I.M. Pei Building |
| | 1105 North Market Street, 12th Floor |
| OF COUNSEL: | Wilmington, DE 19801 |
| David Nelson | (302) 298-0700 |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | jshaw@shawkeller.com |
| 191 N. Wacker Drive, Suite 2700 | arussell@shawkeller.com |
| Chicago, IL 60606 | nhoeschen@shawkeller.com |
| (312) 705-7400 | *Attorneys for Defendant* |

OF COUNSEL:
David Nelson
QUINN EMANUEL URQUHART & SULLIVAN LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
(312) 705-7400

Valerie Lozano
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Nina Tallon
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Dated: May 27, 2022

## **CERTIFICATE OF SERVICE**

      I, John W. Shaw, hereby certify that on May 27, 2022, this document was served on adc-mnat@list.mnat.com and the persons listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Jack B. Blumenfeld<br>Rodger D. Smith II<br>Anthony D. Raucci<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>rsmith@morrisnichols.com<br>araucci@morrisnichols.com<br><br>Ellisen Shelton Turner<br>KIRKLAND & ELLIS LLP<br>2049 Century Park East, Suite 3700<br>Los Angeles, CA 90067<br>(310) 552-4200<br>ellisen.turner@kirkland.com | Amanda J. Hollis<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>(312) 862-2000<br>amanda.hollis@kirkland.com<br><br>Benjamin A. Lasky<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446-4800<br>benjamin.lasky@kirkland.com |

 

                                                               */s/ John W. Shaw*
                                                               John W. Shaw (No. 3362)
                                                               Andrew E. Russell (No. 5382)
                                                               Nathan R. Hoeschen (No. 6232)
                                                               SHAW KELLER LLP
                                                               I.M. Pei Building
                                                               1105 North Market Street, 12th Floor
                                                               Wilmington, DE 19801
                                                               (302) 298-0700
                                                               jshaw@shawkeller.com
                                                               arussell@shawkeller.com
                                                               nhoeschen@shawkeller.com
                                                               *Attorneys for Defendant*

# Exhibit 1

# Redacted in its entirety